UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARIS DEIOR STUDIOS, LLC, a
Michigan Limited Liability Company, and
PARRISH REDD, individual,

        Plaintiffs,

v.

OZONE MUSIC AND SOUND, a
Michigan S-Corporation, and
MARTY PETERS and CHRIS HUGAN,
individually, Jointly and Severally,

        Defendants,
and

FIDELITY CAPITAL GROUP, LLC,
a Michigan Limited Liability Company,

        Intervening Party and Third Party Plaintiff.
_____/

Case No. 13-11819

Honorable Arthur J. Tarnow
Magistrate Judge Laurie J. Michelson

**REPORT AND RECOMMENDATION ON FIDELITY'S EMERGENCY MOTION
FOR CONTEMPT AND TO ENFORCE INJUNCTION [48]**

      Pro se Plaintiff Parrish Redd is the owner of Plaintiff Paris Deior Studios, LLC, a company formed in 2008 to develop and produce motion pictures. Redd is the co-author of the script for the motion picture titled "Pawn Shop." In 2009, Redd needed additional financing to complete post-production and to distribute the film. Intervening Defendant Fidelity Capital Group, LLC, advanced the funding and received an interest in the copyright on "Pawn Shop" to secure the loan. Fidelity initiated state court litigation against Redd and Paris Deior in 2011 when they failed to repay the loan. The state court entered default judgments against Redd and Paris Deior, which included full use of the copyrighted work by Fidelity to recoup its damages. After Fidelity entered into contracts for the post-production and distribution of the film, Plaintiffs brought this federal court litigation

alleging copyright infringement and seeking injunctive relief. Fidelity asserted a counterclaim against Redd and Paris Deior for tortious interference and copyright infringement and also sought injunctive and declaratory relief.

Throughout the litigation, Redd and his sister Terri Buchanan have sent and made numerous harassing and threatening communications to Defendants, Defendants' counsel, and the entities that contracted with Fidelity to perform work on the motion picture. District Judge Arthur J. Tarnow ordered the parties to avoid all communication with one another other than in court filings. He also granted Fidelity's motion for summary judgment on its injunctive relief claim seeking to preclude Redd's harassing conduct. Redd and Buchanan have repeatedly disregarded those orders. Presently before the Court is Defendant Fidelity's motion to hold Redd in civil and/or criminal contempt for his behavior and for violating Judge Tarnow's injunction, the third motion for contempt Defendants have filed in this case. The Court's Notice of Hearing directed Plaintiffs to respond to Defendant's motion by January 6, 2014. (Dkt. 50.) Plaintiffs failed to comply and thus, the motion is unopposed. *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response . . . ."). The Court has reviewed the unopposed motion as well as the related filings and pleadings and finds that the decision process would not be significantly aided by oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, this Court RECOMMENDS that the motion be GRANTED IN PART.

**I.     BACKGROUND**

"Except in cases where a United States Magistrate Judge exercises consent jurisdiction in a civil case under 28 U.S.C. § 636(c) or misdemeanor jurisdiction under 18 U.S.C. § 3401, the Magistrate Judge may not enter an order of civil contempt. Rather, the Magistrate Judge must

proceed under 28 U.S.C. § 636(e)(6)(B)." *U.S. v. Hendrickson*, No. 06-11753, 2010 U.S. Dist. LEXIS 52739, 2010 WL 2318770, at *1 (Apr. 16, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 52682, 2010 WL 2219342 (E.D. Mich. May 28, 2010). "The proper contempt procedure requires that the Magistrate Judge certify findings of fact to support a finding of contempt . . . ." *N.L.R.B. v. Steele*, No. 07-CV-50712, 2008 U.S. Dist. LEXIS 11867, 2008 WL 474077, at *1 (E.D. Mich. Feb. 19, 2008).

Thus, as contemplated by 28 U.S.C. § 636(e)(6)(B), the Court certifies the following facts to Judge Tarnow:

### A. Facts Underlying The Lawsuit

Judge Tarnow's summary judgment opinion finds the undisputed facts that pertain to the underlying allegations in this case. This report, which adopts those facts, therefore will provide only a brief summary.

Plaintiff Parrish Redd ("Plaintiff" or "Redd") is President and sole owner of Paris Deior Studios, LLC ("Paris Deior"). Redd's sister, Terri Redd-Buchanan, is a Vice President. On August 11, 2009, Defendant Fidelity Capital Group, LLC ("Fidelity") and Paris Deior executed a Funding Agreement and a Promissory Note and Security Agreement whereby Fidelity advanced $20,000 to Redd and Paris Deior for the completion of the motion picture "Pawn Shop" (the "Copyrighted Work"). Redd was one of the authors of the Copyrighted Work. Repayment of the loan as well as a guaranteed return on investment (of $60,000.00) was secured by Plaintiffs' interests in the Copyrighted Work.[1]

---

[1] Pursuant to an Agreement between the co-authors of the Copyrighted Work and Plaintiff Paris Deior, the exclusive rights to reproduce, distribute, perform, display, and modify the Copyrighted Work were transferred to Paris Deior on September 1, 2009.

When the loan was not repaid, Fidelity sued Plaintiffs Redd and Paris Deior in state court in 2011 for breach of contract, misrepresentation, fraud, and conversion. On February 29, 2012, the state court entered a default judgment in favor of Fidelity against Paris Deior in the amount of $533,109, plus costs and attorneys' fees, and full use of the Copyrighted Work to recoup Fidelity's full damages.[2] The default judgment also allowed Fidelity to file a lien against the motion picture with the U.S. Copyright Office in order to preserve its rights in the Copyrighted Work as the source of payment for damages.

Fidelity, exercising its rights in the Copyrighted Work as granted by the default judgment, then contracted with a number of entities to complete post-production and begin distribution of the Copyrighted Work. More specifically, on June 12, 2012, Fidelity executed an agreement with Defendant Ozone Music and Sound for the completion of post-production on the motion picture. In August 2012, Fidelity entered into a distribution agreement with The Bosko Group, under which Bosko agreed to seek and contract with avenues of distribution, such as Amazon and iTunes. In turn, Bosko contracted with Gravitas Ventures, LLC, for digital distribution of the Copyrighted Work, and with Music Video Distributor, Inc., for physical distribution of the Copyrighted Work.

---

[2] The default judgment specifically awarded Fidelity:

> full use of the [Copyrighted Work] to recoup its full damages, including . . . access to and use of the [Copyrighted Work], or copies thereof, whether it be to sell the [Copyrighted Work] "as is" or to complete the Motion Picture, which collateral may include all film materials related to, whether recorded before, during and after the recording, filming and preliminary editing of the feature film Pawn Shop, including but not limited to approximately 29 HDCAM tapes master visual recordings, 6 CDs with the master audio recordings, and 1 hard drive containing recorded audio and video footage.

On September 14, 2012, Fidelity recorded its judgment lien on the Copyrighted Work with the U.S. Copyright Office. On December 3, 2012, the state court entered another default judgment in favor of Fidelity and against Redd individually for damages in the amount of $608,109, costs and attorneys' fees, and full use of the Copyrighted Work to recoup Fidelity's damages.

### B.   Procedural History

On April 23, 2013, Redd, proceeding *pro se*, filed this federal court lawsuit on behalf of himself as well as Paris Deior, against Defendant Ozone Music and Sound and its agents Chris Hugan and Marty Peters. Plaintiffs allege infringement of the Copyrighted Work and seek money damages and injunctive relief. (Dkt. 1, Compl.) Because the corporate entity Paris Deior was not represented by counsel, they were dismissed without prejudice on June 21, 2013. Redd's appointed counsel withdrew and Redd continued to represent himself.

Fidelity was granted leave to intervene as a defendant in order to protect its interest in the Copyrighted Work as granted by the judgment lien and state court default judgments against Redd and Paris Deior. Fidelity then brought a counterclaim against Redd. (Dkt. 39.) Fidelity alleges that Redd and Paris Deior have commenced a number of lawsuits and have continuously threatened additional lawsuits against Fidelity and its business relationships relating to the Copyrighted Work. (*Id.*) Fidelity further contends that as a result of the ongoing and threatened litigation, distribution of the Copyrighted Work has been substantially impaired, and a number of business expectancies have withdrawn. (*Id.*) This, says Fidelity, has violated its exclusive rights to the Copyrighted Work. (*Id.*) Thus, Fidelity asserted claims for tortious interference and copyright infringement. (*Id.*) Fidelity also included a count for injunctive relief seeking to enjoin Plaintiff from "filing future lawsuits against [Fidelity's] business and prospective relationships for the completion and

distribution of the Copyrighted Work; enjoining Plaintiff from contacting the vendors, distributors, or other clients or business relationships of [Fidelity] related to the completion and distribution of the Copyrighted Work, and directing Plaintiff to turn over all materials related to the Copyrighted Work to [Fidelity]." (*Id*.)

### C. Defendants' Motions For Contempt

On September 17, 2013, prior to the intervention of Fidelity, Defendant Ozone Music and Sound brought an Emergency Motion for Injunctive Relief, Civil and Criminal Contempt to Cease Criminal Harassment. (Dkt. 29.) Ozone alleged that Redd and his sister, Terri Buchanan,

> have engaged in a continuous pattern of vulgar, racist statements resulting in defamation, harassment, intimidation, blatant distortion of facts and accusations of bribery and criminal conduct via dozens of emails, numerous voicemails and other methods of communications (i.e. phone calls, text messaging) to Defense Counsel and NUMEROUS and myriad individuals regarding the subject matter related to this lawsuit; a companion matter, *Paris Deior Studios, LLC v. Music Video Distributors Inc., et al.*, Case No. 13-12315 Fed. Dist. Ct. E.D. Mich. (recently dismissed on September 12, 2013); and a prior matter filed in the Oakland County Circuit Court, State of Michigan, *Fidelity Capital Group, LLC v. Paris Deior Studios, LLC, Parrish Redd, et al*.

(Dkt. 29, Ozone Mot. for Contempt, ¶ 1.)

On September 25, 2013, Judge Tarnow held a hearing on a number of pending motions. While he entered an Order denying Ozone's motion for contempt (Dkt. 37), during the oral argument he "explicitly ordered all parties to refrain from taking part in any communication with each other outside of its filings." (Dkt. 46, Summ. J. Order at 2.)

On October 11, 2013, after filing their motions for summary judgment, Defendants (Fidelity, Ozone, Hugan, and Peters) filed a Second Motion for Contempt against Redd. (Dkt. 42.) Defendants treated Judge Tarnow's September 25, 2013 directive as an injunction "enjoining the parties from

communicating ex parte regarding the subject of the action . . . ." (*Id*. at ¶ 1.) Defendants argued that Redd "violated the injunction by sending a number of emails to Defendants Ozone, Chris Hugan, and Marty Peters, as well as an email to Gravitas Ventures, a business relationship of [Fidelity], in continuance of [Redd's] pattern of harassing and defamatory behavior." (*Id*. at ¶ 2.) For example, Redd sent an email to Ozone agents Peters and Hugan, stating that they will be "sued and imprisoned," that Redd "will not relent until I am paid and or y'all are prosecuted Criminally," that they "have no defense to liability," and that Redd is "filing more civil lawsuits" and "working with the FBI to file a Criminal Complaint against y'all for the Blatant Fraud and 'Willful' Copyright Infringement of my work." (*Id*. at ¶ 4.)

On November 18, 2013, Judge Tarnow issued an opinion and order granting Defendants' motions for summary judgment as to Plaintiff's Copyright Infringement and Injunctive Relief claims, as well as to Defendants' Copyright Infringement, Tortious Interference, Injunctive Relief, and Declaratory Judgment counterclaims. (Dkt. 46). With respect to the parties' competing injunctive relief counts, Judge Tarnow found "[n]ot only does Plaintiff Redd no longer have rights in the Copyrighted Work, but Defendants have also shown that Plaintiff's actions have interfered with Defendants' ability to use and further profit from the Copyrighted Work." (*Id*. at 11.) In his opinion and order, Judge Tarnow also granted Defendants' second motion for contempt because "Defendants argue that Plaintiff has violated this Court's September 25, 2013 order requiring all parties to refrain from any communication with each other. Defendants provide evidence of emails from Plaintiff repeatedly threatening and harassing Defendant Fidelity and Defendant's counsel, attorney Stacer." (*Id*.) No specific sanction, however, was issued. Judge Tarnow closed the case and a final judgment was entered on November 18, 2013. (Dkt. 47.) No timely appeal has been filed.

7

On December 12, 2013, Fidelity filed the present Emergency Motion for Contempt and to Enforce Injunction. (Dkt. 48.) The motion attaches numerous communications demonstrating that Redd and Buchanan have continued to threaten and harass Defense Counsel, Fidelity, and Fidelity's business relationships regarding the Copyrighted Work. (Dkt. 48, Exs. 3-8.) To punish this misconduct, Fidelity seeks contempt sanctions pursuant to 18 U.S.C. §§ 401 and 402.

## II.   ANALYSIS

### A.   Legal Standard

"When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court." *Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). Whether to hold a party in contempt is within the sound discretion of the district court. *Id.* at 378. "[T]he power 'to punish for contempts' should not be used lightly." *Id.*; *see also Bishop v. Long Term Disability Income Plan of Sap America, Inc.*, No. 04-CV-0031, 2008 U.S. Dist. LEXIS 3431, 2008 WL 170498, at *5 (N.D. Okla. Jan. 16, 2008) ("Civil contempt is a severe remedy that should be used only when absolutely necessary . . . ." (citing *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192 (10th Cir. 1970))). A party seeking to establish contempt must produce "clear and convincing evidence" showing that the alleged contemnor violated a "'definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). The court's prior order must have been "clear and unambiguous," and "[a]mbiguities must be resolved in favor of the party charged with contempt." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550-51 (6th Cir. 2006) (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)).

8

Once the movant establishes a prima facie case of contempt, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983)). To satisfy this burden, the non-movant "must show categorically and in detail why he or she is unable to comply with the court's order." *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir.1996)). When evaluating an alleged contemnor's failure to comply with a court order, the Court "also consider[s] whether the [accused] 'took all reasonable steps within [his] power to comply with the court's order.'" *Id*. (citing *Peppers v. Barry*, 873 F.2d 967, 968, 969 (6th Cir. 1989)).

### B.     Criminal Statutes

Fidelity raises additional avenues for holding a party in contempt. Under 18 U.S.C. § 401, "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as – (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;" and "(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." *See also Int'l Union, UMW v. Bagwell*, 512 U.S. 821, 833, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) (explaining that the power to hold parties in civil contempt, i.e., to assess fines or order imprisonment, ensures that courts can coerce compliance with their decisions and remedy harms caused by past noncompliance). Under 18 U.S.C. § 402,

> Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State

9

> in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.

While Redd and Buchanan's conduct may lead to a criminal prosecution by the appropriate authorities, no such prosecution is pending and nothing in the language of this criminal statute suggests that it provides a private right of action. *See, e.g., Walters v. Bank of America*, No. 09-1060, 2009 U.S. Dist. LEXIS 49155 (D.D.C. May 29, 2009) (finding no private right of action under 18 U.S.C. § 402); *Chevalier v. Creekwood Apartments,* No. 01-4808, 2002 U.S. Dist. LEXIS 2548, at *1, n.1 (N.D. Cal. Feb. 14, 2002) (same).

### C. Violations Of The Court's Orders

As mentioned, Judge Tarnow previously held Redd in contempt for violating his September 25, 2013 (oral) order that the parties "refrain from taking part in any communication with each other outside of its filings." It does not appear, however, that Judge Tarnow intended this ruling to survive the closing of the case. It was not worded as a permanent injunction, and communication in court filings would cease with the termination of the case. At the very least, it is ambiguous whether this order is a permanent injunction and thus, should not be the basis for a contempt sanction.

Fidelity's motion, however, while it references violations of court "orders," focuses on Judge Tarnow's Order granting its motion for summary judgment. This motion included the counts in Fidelity's counterclaim. The count for Injunctive relief requested an order "enjoining Plaintiff[3] from filing future lawsuits against [Fidelity's] business and prospective relationships for the completion and distribution of the Copyrighted Work; enjoining Plaintiff from contacting the vendors, distributors, or other clients or business relationships of [Fidelity] related to the completion and

---

[3] The caption identifies Redd and Paris Deior as the "Plaintiff."

distribution of the Copyrighted Work, and directing Plaintiff to turn over all materials related to the Copyrighted Work to [Fidelity]." (Dkt. 39, Am. Counterclaim at 17-18.) Then, in its motion for summary judgment, Fidelity requested a permanent injunction "enjoining Redd and Paris Deior from continuing to harass, threaten, and defame Fidelity and its business relationships, as well as enjoining Redd and Paris Deior from continuing to initiate lawsuits relating to the Copyrighted Work without the permission of the Court." (Dkt. 40, Fidelity Mot. for Summ. J. at 20-23.) Judge Tarnow granted Fidelity's claim for Injunctive Relief against Plaintiff, thereby granting this request for a permanent injunction. (Dkt. 46 at 11.)

There is no dispute that Plaintiffs have violated Judge Tarnow's permanent injunction. Fidelity's motion and supporting attachments provide numerous examples of Plaintiffs' continued harassing and threatening contacts with Fidelity and its vendors, distributors, and other business relationships pertaining to the Copyrighted Work. In these communications, Redd and Buchanan (mis)represent that this case is not closed, that these entities are liable for copyright infringement and owe Redd damages, that they have engaged in fraud and conspiracy, that they will be sued, and that they "will soon see that it's not a [f***ing] joke." (*Id*. at Exs. 3-8.) These are the same types of contacts, if not worse, that resulted in Judge Tarnow's prior order finding Plaintiffs in contempt. Recipients of the communications are now reporting to Fidelity that they fear for their safety. (*Id*. at 7.) Plaintiffs have also filed, without permission, a lawsuit against Defendant's counsel in the Western District of Michigan, pertaining to the Copyrighted Work. (Mot. for Contempt, Ex. 7.)

Plaintiffs provide no response or justification. Indeed, far from coming forward with evidence showing that they are presently unable to comply with Judge Tarnow' Order or have taken all reasonable steps within their power to comply with the Order, Plaintiffs are intentionally defying

11

the Order. The same is true for Redd's sister, the purported Vice President of Paris Deior. "It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000); *see also ClearOne Comm'cns, Inc. v. Bowers,* 651 F. 3d 1200, 1215-16 (10th Cir. 2011). As the Sixth Circuit has held, "because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer [who fails to take action or attempt compliance." *Gary's Elec. Serv. Co.*, 340 F.3d at 383.

On January 22, 2014, Fidelity filed a Supplemental Brief that attaches numerous additional harassing and threatening communications sent by Redd and Buchanan to Fidelity's business associates since the filing of the motion for contempt. (Dkt. 51.) On January 2, 2014, Redd told Ozone, "y'all are going to [f****ing] pay one way or another." (*Id*., Ex.1 at p. 33.) On January 3, 2014, after representatives of Gravitas noted the Court's November 18, 2013 Order and requested that Redd cease his communications to them, Redd responded, "Imma email u and [f****ing] sue u as long as u keep violating my [f****ing] copyrighted work fool, u have really [f***ed] u now." (*Id*. at p 45.) Redd is also threatening additional lawsuits and criminal prosecution, and Buchanan is representing herself as a collection agent for Paris Deior Studios and demanding payment. As a result of Redd's behavior, "a number of Gravitas employees expressed concern whether Mr. Redd represents a physical threat." (Dkt. 51, Ex. 2, Gallagher Aff., ¶ 5.) The communications have also resulted in the Copyrighted Work being taken down from certain video-on-demand services (like Apple iTunes and Amazon Instant Video), thereby "prohibiting potential sales of the film to consumers that use those services." (*Id*. at ¶ 6.)

**III.    CONCLUSION AND RECOMMENDATIONS**

Accordingly, for the reasons set forth above, this Court recommends that Fidelity's request for contempt sanctions be GRANTED IN PART as follows:

(1) Paris Deior, Redd, and Buchanan be fined $500 for every contact they have had and continue to have with Fidelity and its business relationships pertaining to the completion and distribution of the Copyrighted Work, other than in court filings in properly initiated litigation. *See Oakley, Inc. v. McWilliams*, 890 F. Supp. 2d 1240 (C.D. Cal. 2012) (finding that a permanent injunction that prohibits a party that was sending threatening and harassing emails to another party and its business associates attacking their reputation and accusing them of criminal behavior, from having contact with that party and its business associates does not implicate the First Amendment).

(2) Plaintiffs be directed to pay attorney Stacer the costs and fees he incurs in defending the lawsuit they filed against him in the Western District of Michigan pertaining to the Copyrighted Work.

(3) Redd and Buchanan be ordered to appear at a date certain before Judge Tarnow to show cause why their disregard of the Court's November 18, 2013 Order was not wilful or does not otherwise warrant incarceration as an appropriate contempt sanction. *See United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. 1975). And

(4) Paris Deior, Redd, and/or Buchanan pay Fidelity's reasonable costs and attorney fees associated with bringing this motion for contempt. *See TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) (explaining that the award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding.").

**IV.    FILING OBJECTIONS**

13

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                      S/Laurie J. Michelson  
                                                      Laurie J. Michelson  
                                                      United States Magistrate Judge

Dated: January 24, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on January 24, 2014.

                                                        s/Jane Johnson  
                                                      Case Manager to  
                                                      Magistrate Judge Laurie J. Michelson